KINGS COUNTY ECONOMIC COMMUNITY DEVELOPMENT ASSOCIATION et al., Plaintiffs-Appellants,

v.

Clifford M. HARDIN et al., Defendants-Appellees.

No. 72-1554.

United States Court of Appeals, Ninth Circuit.

April 16, 1973.

---

Burton D. Fretz (argued), California Legal Assistance, Santa Maria, Cal., Peter H. Reid, Legal Aid Society of San Mateo County, Daly City, Cal., for plaintiffs-appellants.

Peter R. Steenland (argued), Dept. of Justice, Washington, D. C., Dwayne Keyes, U. S. Atty., Joel A. Wallock, Asst. U. S. Atty., Sacramento, Cal., Kent Frizzell, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before MERRILL and DUNIWAY, Circuit Judges, and CONTI,* District Judge.

MERRILL, Circuit Judge:

The Kings County Economic Community Development Association, in its complaint filed in this action, describes itself as "an unincorporated association of low-income persons who reside in Kings and Kern Counties, California; the members of said organization cannot afford to purchase bottled water and filters and accordingly must drink, wash and bathe in the high-nitrate water from wells in the vicinity of Delano, California." Joined with the association, as plaintiffs, are individuals representing a class of "hand-harvest farm workers in the State of Cali-

---

* Honorable Samuel Conti, United States District Judge for the Northern District of California, sitting by designation.

fornia facing daily exposure to polluted waters in the State."

Plaintiffs' concern is with the danger created by the poisonous aftereffects of agricultural pesticides and fertilizers. They have unsuccessfully sought administrative relief and have prepared a proposed "clean water plan" which has not received acceptance. This action was brought against the Secretary of Agriculture, the Secretary of the Interior, and certain officials of both departments, to require them to take action in the control of water pollution caused by agricultural water users.

The complaint focuses on action required by the National Environmental Policy Act, 42 U.S.C. § 4331 et seq., and the Federal Water Pollution Control Act, 33 U.S.C. § 1151 et seq. It is plaintiffs' aim eventually to secure action from federal agencies denying farm subsidies and loans to users of pesticides and fertilizers. By this suit they seek to compel defendants to take action in this direction by way of studies, hearings and reports.

The District Court, finding no relief available under the Acts on which plaintiffs rely, granted defendants' motion to dismiss.

Plaintiffs' difficulty is due to the fact that their concern is directed toward private rather than public action—the use of pesticides and fertilizers by private individuals.

The Federal Water Pollution Control Act, for example, requires compliance with applicable water quality standards by federal agencies having jurisdiction over federal facilities or engaging in public works activities. 33 U.S.C. § 1171.

On this appeal, appellants' principal emphasis is upon the National Environmental Policy Act. They assert, first, that appellees have failed to file an Environmental Impact Statement under § 102(2)(C), 42 U.S.C. § 4332(2)(C). They regard the payment of farm subsi-

dies as "major Federal actions significantly affecting the quality of the human environment."

■ But this simply is not so. Payment of the subsidies is mandatory under the Agricultural Act of 1970, 84 Stat. 1358. The recipient is free to use the money in any way he sees fit. The fact that it (or other money of the recipient) was put to a use affecting the environment cannot convert that private use into federal action.

■ Appellants next contend that appellees have failed to comply with § 103 of the Act, 42 U.S.C. § 4333. Section 103 reads:

*"Conformity of administrative procedures to national environmental policy*

All agencies of the Federal Government shall review their present statutory authority, administrative regulations, and current policies and procedures for the purpose of determining whether there are any deficiencies or inconsistencies therein which prohibit full compliance with the purposes and provisions of this chapter and shall propose to the President not later than July 1, 1971, such measures as may be necessary to bring their authority and policies into conformity with the intent, purposes, and procedures set forth in this chapter."

But a § 103 review was conducted and measures were proposed. Under date of September 9, 1970, the Council on Environmental Quality was advised of the Department's review. The Secretary stated:

"As a result of this review and other Departmental studies, many corrective actions have been taken and many others are planned. A list of actions exemplifying steps that have been taken and the steps that are underway is attached. We regard this review as a continuing program, and we fully ex-

pect to turn up other actions as we proceed in interpreting and fully implementing the Act. Also attached is a list of possible changes in our statutory authorities. These are being considered for submission as legislative proposals following the usual process. For your further information, we are enclosing a set of Departmental directives illustrating the progress made to date in implementing the Act."

The fact that the report did not include any recommendation respecting farm subsidies was explained by affidavit of the Assistant Secretary for International Affairs and Commodity Programs:

" * * * the Department has administratively determined that it is not desirable to impose as a condition for payments and loans under the Department's commodity programs that farmers follow certain practices in using pesticides, herbicides and fertilizers so as to maintain water quality standards.

We are of the opinion that these conditions are unrelated to the purposes for which the programs were adopted, namely to secure fair income for farmers, to provide for an adequate, but not excessive, supply of food and fibers and to provide more flexibility for farmers in making their own farm operating decisions. We believe that it would not be proper to impose conditions on participation in these programs as a means of inducing compliance with objectives that are foreign to the purposes for which the programs were established."

In our judgment this is a wholly rational explanation, and failure to conclude and recommend action to the contrary cannot be said to constitute a failure to comply with the Act.

Judgment affirmed.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of